**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MAPINFO CORPORATION,

        Plaintiff and Counter-Defendant,

    v.                             No. 02-CV-1008
                                          (DRH)

SPATIAL RE-ENGINEERING
CONSULTANTS,

        Defendant, Counter-Claimant, and
        Third-Party Plaintiff,

    v.

USADATA, INC.,

        Third-Party Defendant.

_____

**APPEARANCES:**                   **OF COUNSEL:**

WHITEMAN OSTERMAN & HANNA LLP    MARGARET J. GILLIS, ESQ.
Attorney for Plaintiff and
   Third-Party Defendant
One Commerce Plaza
Suite 1900
Albany, New York 12260

COHEN, DAX & KOENIG, P.C.        JOHN W. DAX, ESQ.
Attorney for Defendant             JESSICA A. NORGROVE, ESQ.
90 State Street
Suite 1030
Albany, New York 12207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

    Plaintiff MapInfo Corp. ("MapInfo") brought this action against its former partner,

Spatial Re-Engineering Consultants ("SRC"), alleging six separate causes of action.  Am.

Compl. (Docket No. 59).  SRC answered, asserting fourteen separate counter-claims (Docket No. 93) and commencing a third-party action against USADATA, Inc. ("USADATA") (Docket No. 52).[1]  Presently pending is SRC's motion to preclude MapInfo's expert witness (Docket No. 126), MapInfo's motion to preclude SRC's expert witnesses (Docket Nos. 128, 129), and the motions of SRC and MapInfo for summary judgment pursuant to Fed. R. Civ. P. 56(b) (Docket Nos. 127, 130).  SRC moves for summary judgment as to five of the six causes of action asserted by MapInfo in its amended complaint, eight of its fourteen counter-claims, and all third-party causes of action against USADATA.  Docket No. 127.  MapInfo moves for partial summary judgment as to the first cause of action in its amended complaint, all remaining counter-claims asserted by SRC against MapInfo, and all remaining third-party causes of action against USADATA.  Docket No. 130.

For the reasons which follow, MapInfo's motions to preclude SRC's expert witnesses are granted in part and denied in part, SRC's motion to preclude MapInfo's rebuttal expert is granted, MapInfo's motion for summary judgment is granted in part and denied in part, and SRC's motion for summary judgment is denied.


## I. Background

MapInfo is a Delaware corporation with a principal place of business in Troy, New York.  SRC is a California limited liability corporation with a principal place of business in Orange, California.  Both companies create, manufacture, and market computer software.

---

[1]MapInfo and USADATA assert joint interests in this action and are jointly represented by the same counsel.  See, e.g., Docket Nos. 101, 130, 140.

On October 1, 1998, MapInfo and SRC entered into a partnership agreement which authorized SRC to distribute MapInfo products to end-users.  Gillis Decl. (Docket No. 130) at Ex. 2, Ex. A; Dax. Aff. (Docket No. 127) at Ex. 6 ("Partnership Agreement").  The parties also entered into a development and distribution agreement which provided that SRC would develop its proprietary software ("Allocate" and "Solocast") and integrate it with MapInfo's proprietary data to create a joint product that would be marketed under MapInfo's trademark, TargetPro.  Dax Aff. at Ex. 58, Ex. A ("1998 Distribution Agreement").  The 1998 Distribution Agreement also granted MapInfo certain rights to distribute SRC's software.  Id.

On December 22, 2000, MapInfo and SRC entered into another development and distribution agreement that superceded the 1998 Distribution Agreement.  Dax Aff. at Ex. 8; Gillis Decl. at Ex. 2, Ex. C ("2000 Distribution Agreement").  The 2000 Distribution Agreement granted the parties the rights to develop and distribute certain products, including TargetPro. Id.  However, the partnership deteriorated and both SRC and MapInfo sought termination of the Partnership Agreement and the 2000 Distribution Agreement.  Def. Statement of Material Facts (Docket No. 127) at ¶ 19; Pl. Reply Statement of Material Facts (Docket No. 140) at ¶ 19.  On February 15, 2002, the parties entered into an agreement to terminate the partnership on July 1, 2002.  Dax Aff. at Ex. 9; Gillis Decl. at Ex. 2, Ex. B ("Termination Agreement").

On August 8, 2002, MapInfo commenced this action by alleging a single cause of action for breach of the Termination Agreement.  Docket No. 1.  SRC answered, asserting various counter-claims, and commenced a third-party action against USADATA.  Docket Nos. 3,4.  MapInfo moved to dismiss various SRC counter-claims and, along with USADATA,

3

moved for summary judgment on SRC's counter-claims and third-party complaint for all claims relating to: 1) breach of contract and copyright infringement; and 2) violations of the Lanham Act, 15 U.S.C. § 1114, and New York General Business Law § 349.  Docket Nos. 25, 29.  SRC cross-moved for a declaratory judgment that it was entitled to audit MapInfo's books and to amend its answer and counter-claims.  Docket No. 34.  By Order dated April 2, 2003, SRC's motion to amend its answer and third-party complaint was granted as was MapInfo's motion to dismiss SRC's counter-claim for prima facie tort, and any claim that USADATA did not have the right to use TargetPro 3.7 after July 2002.  Docket Nos. 49, 57. All other motions were denied.  Id.

MapInfo filed an amended complaint adding five causes of action against SRC for conduct allegedly occurring after July 1, 2002.  See Am. Compl.  SRC then moved to dismiss or for partial summary judgment as to five of the six causes of action asserted by MapInfo in its amended complaint and MapInfo cross-moved for partial summary judgment as to three of its causes of action.  Docket Nos. 73, 77.  On January 5, 2004, this Court granted MapInfo's cross-motion as to its third cause of action for an audit of SRC's records but denied all other motions.  Docket No. 92.  On January 15, 2004, SRC answered MapInfo's amended complaint, again asserting certain counter-claims.  Docket No. 93.

## II. Motions to Preclude

### A. SRC Expert G.T. Reilly & Co.

MapInfo moves to preclude the report and testimony of SRC's expert witness, G.T. Reilly & Co. ("G.T. Reilly"), on the ground that the report does not satisfy the requirements for

relevance or reliability established by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny.  Docket No. 129.  MapInfo contends that James T. McNamara, the individual at G.T. Reilly responsible for the review of MapInfo's records, testified that neither he nor anyone else at G.T. Reilly had an opinion to a reasonable degree of accounting certainty as to the accuracy of MapInfo's royalty reports, the accuracy of MapInfo's overall royalty payments to SRC, or whether the payments complied with the royalty requirements specified in the parties' contract.

Under Fed. R. Evid. 702, an expert witness' testimony is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  A district court is charged with the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert, 509 U.S. at 597; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004).

SRC retained G.T. Reilly "solely to assist [SRC] in determining the accuracy of the royalties paid by MapInfo to SRC, and MapInfo's compliance with the related royalty agreement between SRC and MapInfo."  G.T. Reilly Report (Docket No.129, Gillis Decl., Ex. B) at 1.  G.T. Reilly's procedures were divided into four separate groups of sales: (1) MapInfo's entire sales population for the period January 1998 through December 2001; (2) TargetPro-related sales; (3) sales transactions with MapInfo's largest customers for the period January 1, 1998 through December 31, 2001; and (4) TargetPro-related products from the period July 1, 2002 through June, 2003.  Id.  The report concluded, inter alia, that based

upon a sample of $2.3 million in MapInfo sales, the projected additional royalties due SRC

were $262,964.  Id. at 6.[2]

MapInfo moves to preclude G.T. Reilly's report, relying heavily on James T.

McNamara's deposition testimony that neither he nor anyone else at G.T. Reilly had an

opinion "to a reasonable degree of accounting certainty" as to the accuracy of MapInfo's

royalty reports or the accuracy of MapInfo's royalty payments to SRC.  McNamara Dep.

(Docket No.129, Gillis Decl., Ex. A) at 19-25.  MapInfo contends that this failure renders the

report irrelevant and inadmissible.  However, there is no threshold requirement that an

expert's opinion "must be expressed in terms of a reasonable scientific certainty in order to

be admissible."  United States v. Cyphers, 553 F.2d 1064, 1072 (7th Cir. 1977) (citations

omitted); see also Schulz v. Celotex Corp., 942 F.2d 204, 208 (3d Cir. 1991) ("Care must be

taken . . . to see that the incantation [to a reasonable degree of medical certainty] does not

become a semantic trap and the failure to voice it is not used as a basis for exclusion without

analysis of the testimony itself.").  Although it is well-established that "expert testimony

should be excluded if it is speculative or conjectural, or if it is based on assumptions that are

'so unrealistic and contradictory as to suggest bad faith,'" Boucher v. U.S. Suzuki Motor

Corp., 73 F.3d 18, 21 (2d Cir. 1996) (internal citations omitted), nothing in the language of

---

[2] G.T. Reilly "calculated $35,982 in additional royalties due SRC . . . based upon a sample of $2.3 million, for an error rate of approximately 1.56%.  The total sample size tested represents 14.6% of the $15.3 million in sales that were reported for the period January, 1998 to December, 2001.  We can, therefore, estimate that the projected additional royalties due SRC based upon the error rate, sample size and population test is $246,318, including the known errors of $35,982."  G.T. Reilly Report at 6.  The inclusion of $16,646 in additional "Telecom Royalties" brought the total to $262, 964.  Id.

Rule 702 requires an expert to certify that their opinion is to a reasonable degree of scientific certainty.  See United States v. Mornan, 413 F.3d 372, 381 (3d Cir. 2005).

MapInfo cites a single New York district court case in support of its contention that an expert's opinion must be excluded when the expert fails to offer opinion testimony to a reasonable degree of professional certainty.  See Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 440 (W.D.N.Y. 2001).  However, Prohaska dealt with the strict standards imposed on a medical expert when performing a differential diagnosis.  Id. at 438-39.  Nowhere in the opinion does the district court hold that all expert testimony must be stated to a reasonable degree of certainty.  Thus, Prohaska is distinguishable from the facts of this case.

MapInfo also contends that G.T. Reilly ignored overpayments brought to its attention because SRC instructed them to do so, double-counted underpayments, and applied other procedures to overstate underpayments.  However, disputes as to the methodology used by G.T. Reilly goes to the weight, not the admissibility, of the report.  See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).  The procedures used by G.T. Reilly were performed in accordance with the attestation standards established by the American Institute of Certified Public Accounts, and, thus, are adequate.

Therefore, MapInfo's motion to preclude G.T. Reilly's report is denied.


### B. SRC Expert Keegan

MapInfo moves to preclude the reports and testimony of SRC expert Dr. Warren J. Keegan ("Dr. Keegan") concerning SRC's damages from MapInfo's alleged disparagement on the ground that the reports do not satisfy the requirements for reliance or reliability

established by Daubert and Fed. R. Evid. 401 and 702.  Docket No. 128. MapInfo contends that Dr. Keegan's reports failed to use proper methodology and assumed the effect of a "campaign of disparagement" that was not supported by the evidence.

### 1. Dr. Keegan's Proposed Testimony

Dr. Keegan is the Distinguished Professor of Marketing and International Business and Director of the Center for Global Business Strategy at the Lubin School of Business at Pace University.  Dr. Keegan's reports contain his opinions regarding SRC's lost sales as a result of MapInfo's alleged disparagement.  To calculate these lost sales, Dr. Keegan "constructed a financial model to estimate what portion of MapInfo's predictive analytics income would have shifted to SRC had MapInfo not disparaged the products and reputation of SRC."  Keegan Report I (Docket No. 126, Ex. A) at 5.  Dr. Keegan concluded "that had MapInfo not disparaged SRC, SRC would have earned an additional $7,516,911 (present value) in marginal profit, net of all expenses from partner sales and $7,908,611 (present value) in gross profit from sales directly to customers" for a total loss of marginal profit to SRC of $15,425,572. Id. at 10.  After performing an updated damages model calculation, this total was increased to $15,494,614.  Keegan Report II (Docket No. 126, Ex. B) at 17.  Dr. Keegan assumed that MapInfo engaged in a campaign of disparagement against SRC and that this campaign was effective in preventing SRC from acquiring business they would have obtained absent the disparagement.  See Keegan Dep. I (Docket No. 126, Ex. E) at 46-47.

**2. Discussion**

SRC contends that on six separate occasions, MapInfo personnel made false, disparaging statements to resellers and customers in an attempt to harm SRC: a June 25, 2002 MapInfo WebEx, an Internet-based videoconference; a MapInfo TargetPro 4.0 Sales Kit, which included an SRC competitive document know as a "kill sheet"; a July 11, 2002 MapInfo conference call; a July 22, 2002 e-mail from MapInfo to USADATA;[3] an August 22, 2002 MapInfo WebEx; and an August 23, 2002 e-mail from Fred Cassin, a MapInfo employee, to Sean Robbins, a prospective customer.  See Pl. Statement of Material Facts (Docket No. 130) at ¶¶ 33, 75, 77-78; Def. Mem. of Law (Docket No. 127) at 8-16.  MapInfo contends that these alleged statements had no effect on either resellers or customers.  In support of its contention, MapInfo offers declarations from thirty-two separate partners or resellers and five customers that either they never heard the alleged statements or, if they did, the statements had no effect on their view of SRC.  Pl. Statement of Material Facts at ¶¶ 39, 41, 45, 50, 56-58, 76, 78, 86, 88, 98, 100, 102 (and citations cited therein).  To the extent that SRC disputes any of these witnesses' statements, it does not offer any evidence to demonstrate that this testimony is false or unreliable.  Instead, SRC argues that the testimony of the resellers and customers is nothing more "than a collection of assertions . . .

_____

[3] In its Statement of Material Facts, MapInfo mistakenly describes this as a "June 23, 2002" e-mail.  Pl. Statement of Material Facts at ¶ 33,75.  However, MapInfo appears to be referencing a July 22, 2002 e-mail between Steve Seabury, a MapInfo employee, and USADATA in which Seabury refers to the "inherent weakness within the SRC technology."  Eric Murphy Decl. (Docket No. 130) at Ex. C.

that they were not influenced."[4]  Def. Reply to Motion to Preclude (Docket No. 138) at 3.

"However, mere conclusory allegations, speculation or conjecture will not avail a party

resisting summary judgment."  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

SRC has proffered further evidence to demonstrate the effect MapInfo's alleged

disparagement had on SRC in the marketplace.  In its answer, SRC alleges that MapInfo's

disparagement of SRC and SRC's products resulted in the loss of customers and potential

customers, damage to its reputation and the reputation of its products, and lost dealings.

Answer (Docket No. 93) at ¶¶ 115, 141, 145, 149, 153.  SRC included the following

customers as evidence of lost customers and potential customers: USUnwired ($35,000);

RackRoom Shoes ($45,000); Sav-a-Lot ($75,000); Schwans Sales Enterprises ($60,000);

Mieneke Muffler ($50,000); Atlanta Journal-Constitution ($35,000); Martin Agency ($50,000);

Northwestern Mutual Life ($70,000); Hannaford Brothers ($45,000); Albertson's Stores

($75,000); Physician Mutual Insurance ($45,000); and Sprint ($500,000).  Answer at ¶¶ 141,

149, 153, 157.  SRC also added ten more customers in its discovery responses that refused

to do business, stopped doing business, or did less business with SRC after the alleged

disparaging statements in the June 25, 2002 WebEx: Build A Bear, Club Corporation of

---

[4] In another response, SRC acknowledged that the

identified resellers have stated what they have stated but SRC's marketing
and economics expert Dr. Warren Keegan testified that negative advertising
and disparagement work effectively because the recipient may not be aware,
or may choose to deny, that he or she has been influenced by it, such that,
in this case, purchases that otherwise would have been made from SRC
were not made even by resellers that continued to do some business with
SRC.

Def. Reply Statement of Material Facts (Docket No. 139) at ¶ 45.

America, Gannett, Post & Courier, Rainbow Advertising, U-Haul, Wendy's, Empower

Geographics, TerraNOVA, and Galilee Enterprises.  Gillis Decl., Ex. 31 at 6-7.  However,

SRC again fails to demonstrate that MapInfo's alleged disparagement had any effect on

these resellers or customers.

During his deposition testimony, Dean Stoecker ("Stoecker"), SRC's President,

admitted that the only proof he had that the twelve customers named in SRC's answer were

affected by the alleged disparagement, and thus "lost or potentially lost customers," was that

SRC was sometimes given the "cold shoulder" when they attempted to sell to these

customers.  Stoecker Dep. (Gillis Decl., Ex. 15) at 339-47; Def. Reply Statement of Material

Facts at ¶ 84.[5]  However, Stoecker's mere speculation as to why certain customers gave

SRC the "cold shoulder," without any further proof, is insufficient to demonstrate that the

named customers were affected by the alleged disparagement.  Cifarelli, 93 F.3d at 51.  For

the remaining ten customers cited by SRC, MapInfo has provided declarations from four that

the alleged disparagement had no effect on their dealings with SRC.[6] Also, it is undisputed

that three of the customers cited have never done business with SRC.[7]  Two of the

_____

[5] SRC admits that this was Stoecker's testimony at the time of his deposition but contends that SRC has since obtained proof that at least four of these customers were exposed to the alleged disparagement.  However, the only relevant issue is whether the alleged disparagement had any effect on the customer, not whether the customer was exposed to it.

[6] Gannett (Giroux Decl. (Docket No. 130) at ¶¶ 6-7), Empower Graphics (Machinis Dep. (Docket No. 130, Gillis Decl., Ex. 11) at 22, TerraNOVA (Walklet Dec. (Docket No. 130) at ¶¶ 5,9), and Galilee (Dombrowski Decl. (Docket No. 130) at ¶¶ 6, 9, 11, 13).  SRC does not dispute these statements.  See Def. Reply Statement of Material Facts at ¶¶ 98, 100, 102.

[7] Build a Bear, Uhaul, and Wendy's.  See Gillis Decl., Ex. 30 at Ex. A.

11

customers purchased products from SRC after the alleged disparagement.[8]  The only disputed customer is Rainbow Advertising ("Rainbow").  MapInfo contends that SRC's decrease in sales preceded the alleged disparagement and that SRC's sales to Rainbow stopped before the first incident of alleged disparagement.  See Pl. Statement of Material Facts at ¶ 97.  SRC contends that Rainbow failed to renew its contract with SRC in April 2003 and instead chose MapInfo's product.  Def. Reply Statement of Material Facts at ¶ 97.  However, SRC fails to offer any proof that Rainbow's failure to renew had anything to do with the alleged disparagement.  Thus, SRC has failed to demonstrate that MapInfo's alleged disparagement had any effect on its customers.

MapInfo contends that Dr. Keegan's testimony should be precluded because it was based on an erroneous assumption that MapInfo's alleged disparagement had caused SRC to lose potential sales.  Pl. Motion to Preclude (Docket No. 128) at 8-10.  In support of this contention, MapInfo cites Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 75 F. Supp. 2d 235 (S.D.N.Y. 1999), aff'd, 314 F.3d 48, 59-61 (2d Cir. 2002).  In Fashion Boutique, the district court precluded the plaintiff's expert on damages in a product disparagement case because the expert's testimony was based upon a causal assumption that plaintiff failed to prove.  Fashion Boutique, 75 F. Supp. 2d at 238.  SRC attempts to distinguish Fashion Boutique from the instant case, arguing that unlike Fashion Boutique, where plaintiff only proffered its expert as an expert in damages and not causation, Dr. Keegan's testimony is being offered to prove both causation and damages.  Def. Reply to Motion to Preclude at 3-4. However, Dr. Keegan has repeatedly testified that he assumed that the alleged

---

[8] Post & Courier and Club Corporation of America.  See id.

disparagement occurred and that it impacted the customers in the marketplace.  See Keegan Dep. I at 31-34, 46-47, 96; Keegan Dep. II (Dax. Aff., Ex. F) at 108-109.  Further, Dr. Keegan testified that he did not know when the first alleged act of disparagement took place or for how long the disparagement lasted.  Keegan Dep. I at 44-45.  For these reasons, Dr. Keegan's testimony will not be considered for causation.  SRC's failure to prove in any other way a causal connection between MapInfo's alleged disparagement and any losses by SRC renders Dr. Keegan's testimony on damages irrelevant.

Therefore, MapInfo's motion to preclude Dr. Keegan's testimony is granted.  Further, because the expert report of Dr. Roy J. Epstein, MapInfo's rebuttal expert, were proffered to respond to Dr. Keegan's reports, Dr. Epstein's reports are now irrelevant and SRC's motion to preclude his reports (Docket No. 126) is granted.  See Epstein Report (Docket No. 126, Dax. Aff. at Ex. A) at 1 ("I [Dr. Epstein] have been asked by counsel for MapInfo . . . to respond to the expert report submitted on behalf of [SRC] by Warren J. Keegan.").


### III. Motions for Summary Judgment

The amended complaint asserts the following causes of action:[9]

**Cause of
Action No.   Description**

| | |
|---|---|
| 1 | Breach of contract for failure to make payments required under the Termination Agreement |
| 2 | Breach of contract for the distribution of MapInfo products after July 1, 2002 |

---

[9] On January 5, 2002, MapInfo's third cause of action, for an audit of SRC, was granted.  See Docket No. 92 at 11-12.

13

4        Unfair trade practices -- false designation of origin

5        Unfair trade practices – false advertising

6        Copyright infringement

SRC asserts the following counter-claims:[10]

| Counter-Claim No. | Description |
|---|---|
| 2 | Breach of contract -- disparagement |
| 3 | Failure to make royalty payments |
| 4 | Breach of contract for allowing USADATA to utilize SRC's software |
| 5 | Breach of contract for excluding SRC from MapInfo partner events |
| 6 | Unfair trade practices - disparagement |
| 7 | Defamation per se |
| 8 | Product disparagement |
| 9 | Injurious falsehood |
| 11 | Reverse passing off[11] |
| 12-14 | Copyright infringement |

SRC asserts the following third-party causes of action against USADATA:[12]

_____

[10] On April 2, 2003, SRC's motion for summary judgment as to its first counter-claim and MapInfo's motion to dismiss as to the tenth counter-claim were granted.  Docket No. 49.

[11]Selling another's product under one's own name.  See Attia v. Soc'y of N.Y., 201 F.3d 50, 59 (2d Cir. 1999) ("'[P]assing off' [occurs when] 'A' sells its product under 'B's' name [and] 'reverse passing off [occurs when] 'A' sells "B's' product under 'A's' name.").

[12] On April 2, 2003, USADATA's motion for summary judgment as to the fourth cause of action in SRC's third-party complaint was granted.  Id.

14

**Cause of**
**Action No.   Description**

    1      Breach of Contract

  2-3     Copyright infringement


## A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

**B. Breach of Contract, Copyright Infringement, and Third-Party Claims**

MapInfo moves for summary judgment on SRC's fourth, thirteenth, and fourteenth counter-claims and for all third-party claims against USADATA on the grounds that the USADATA license was valid in all respects. SRC moves for summary judgment as to its fourth, thirteenth, and fourteenth counter-claims against MapInfo and its first and second third-party causes of action against USADATA on the grounds that the rights granted by MapInfo to USADATA were outside the scope of the agreement.

Here, the dispute centers on the parties' interpretation of § 2.1.3 of the 2000 Distribution Agreement. Section 2 of the Agreement, entitled "License Grants and License Restrictions," states, in relevant part:

> 2.1 <u>Development/Production Licenses.</u>  Subject to the terms and conditions contained herein, Company [SRC] grants to MapInfo, and MapInfo accepts:
>
> . . .
>
> 2.1.3  The MapInfo User Interfaces may be made using any MapInfo or 3rd party technology . . ., but the Licensed Products may not [be] used by MapInfo for an Internet-based subscription or pay as you go access to MIDD; however, for the avoidance of doubt, MapInfo standard licensing provisions for the Licensed Products as licensed by End Users do permit use by End Users in and [sic] Application Service Provider internet environment.

2000 Distribution Agreement at 3.

The parties do not dispute that New York law applies to these claims. "'Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.'" <u>British Int'l Ins. Co. v. Seguros La Republica, S.A.</u>, 342 F.3d 78, 82 (2d Cir. 2003) (quoting <u>Cruden v. Bank of N.Y.</u>, 957 F.2d 961, 976 (2d Cir. 1992)). "When the question is a contract's proper

construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d Cir. 1992) (citations omitted).  However, "[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate . . . ." <u>Id.</u> (citations omitted).

Here, the issue of whether the contract's language is ambiguous has already been decided.  A February 10, 2003 decision held that

> [b]ecause the Court cannot determine the meaning of service bureau agreements or the intent of the parties when entering into this contract, from the four corners of the document, the contract is ambiguous, and the issue becomes one of fact.  Extrinsic evidence of the parties' intent will be necessary to determine the meaning of the contract provisions at issue.

Docket No. 57 at 11-12.  Under the law of the case doctrine, a prior ruling should not be revisited "in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>United States v. Thorn</u>, 446 F.3d 378, 383 (2d Cir. 2006) (quoting <u>United States v. Tenzer</u>, 213 F.3d 34, 39 (2d Cir. 2000) (citations and internal quotation marks omitted)).  Because there is no cogent or compelling reason to revisit this ruling that the contract terms are ambiguous, extrinsic evidence is required to discern the intentions of the parties.  <u>See</u> <u>Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London</u>,136 F.3d 82, 86 (2d Cir. 1998) ("If the court finds that the terms [of the contract] . . . are ambiguous, then the court may accept any

available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.").

MapInfo argues that there are four separate categories of extrinsic evidence to support their contention that the USADATA license was fully consistent with the license grants in the 2000 Distribution Agreement: (1) the Application Service Provider ("ASP") license was a standard MapInfo license and it was typical to append service bureau riders to them, (2) Stoecker had access to MapInfo's standard end user licenses but failed to stay current with their language, (3) Stoecker's view of service bureau agreements was contrary to the custom in the industry, and (4) Stoecker's November 2001 e-mail to USADATA demonstrates that he was aware USADATA was using TargetPro to generate reports for its customers.  Pl. Mem. of Law (Docket No. 130) at 41-42.

MapInfo cites Stoecker's November 2001 e-mail as the "most compelling evidence that the USADATA license was fully consistent with the license grants in the WWD [2000 Distribution Agreement]."  Id. at 48.  The e-mail states, in relevant part,

> Glad to see that USADATA.com is using our Allocate Engine (From MapInfo it is called TargetPro) to generate your demographic/firmagraphic reports.  I believe it is appropriate to leave our Copyright notice at the bottom of the reports though. . . While I do not know your deal with MapInfo, I think it is probably fair to give us credit for the engine, particularly since we get a piece of the revenue [sic] you to MapInfo.

Eric Murphy Decl. at Ex. B.  SRC contends that this e-mail was not an acknowledgment of the agreement between SRC and USADATA but rather an attempt to determine whether SRC software was being used by USADATA in their reports.  In support of this position, SRC cites correspondence between Stoecker and USADATA requesting that they cease using SRC software in their reports.  Stoecker Aff. V. (Docket No. 139) at ¶ 49.

18

It is unclear from this single e-mail what the true intentions of Stoecker were and how much he knew about the relationship between MapInfo and USADATA.  Further, to the extent that MapInfo relies on this single e-mail to establish a course of dealing between the parties, the argument must fail because "it is settled law that a single instance cannot establish a course of dealing."  Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., No. Civ. 01-1047(AJP), 2002 WL 31174470, at *33 n.41 (S.D.N.Y. Sept. 26, 2002) (citations omitted); see also Conte v. U.S. Alliance Fed. Credit Union, 303 F. Supp. 2d 220, 230 (D. Conn. 2004) ("one incident, on its own, is insufficient to establish a custom or practice").

When the intent of the parties is ambiguous, "summary judgment is still proper 'when the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation.'"  SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004) (quoting Collins v. Harrison-Bode, 303 F.3d 429, 434 (2d Cir. 2002) (citation omitted)).  MapInfo's proffered extrinsic evidence is not so "one-sided" as to allow no reasonable factfinder to decide contrary to SRC's interpretation of the agreement.  In support of its position, MapInfo cites Viacom Int'l v. Lorimar Prods., Inc., 486 F. Supp. 95 (S.D.N.Y. 1980). In Viacom, the district court held that the contract provision and the parties' course of dealing for nearly five years before the dispute arose was sufficient to reject defendant's position that contradicted the parties' past conduct.  Viacom, 486 F. Supp. at 98-99.  However, in Viacom, the record was "replete with numerous instances, oral and written, wherein defendant recognized" that the contract provision in question was the governing provision.  Id. at 98. This single e-mail, along with MapInfo's other proffered extrinsic evidence, fails to establish

19

an uncontradicted course of dealing between SRC and MapInfo similar to the conduct of the parties in Viacom.

Therefore, the motions for summary judgment of MapInfo and SRC as to SRC's fourth, thirteenth, and fourteenth counter-claims and the first, second, and third third-party claims are denied.

### 1. Breach of Contract Counter-Claim

In its second counter-claim, SRC contends that MapInfo made disparaging statements in breach of the non-disparagement clauses in the 2000 Distribution Agreement and the Termination Agreement.  Mapinfo contends that SRC cannot prove damages as a result of the alleged disparagement.

To establish a breach of contract claim under New York law,[13] a party must demonstrate proof of "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (citing Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co., 612 F. Supp. 134, 137-39 (S.D.N.Y. 1985)).  As discussed above, SRC has failed to demonstrate that the alleged disparaging statements had any effect on SRC's business and, thus, SRC cannot prove damages.

Therefore, MapInfo's motion for summary judgment as to SRC's second counter-claim is granted.

---

[13] The Agreements are expressly governed by New York law.  See 2000 Distribution Agreement at § 14.6; Termination Agreement at ¶ 16.

### C. Lanham Act and N.Y. GBL § 349 Claims

SRC's sixth counter-claim alleges that Mapinfo's alleged disparagement about SRC and SRC's software constituted unfair trade practices in violation of the Lanham Act and N.Y. Gen. Bus. Law § 349 (McKinney 2004) (§ 349").  SRC's eleventh and twelfth counter-claims allege that MapInfo engaged in reverse passing off and infringed on SRC's copyright after July 1, 2002 in violation of the Lanham Act, § 349, and 17 U.S.C. § 501.

### 1. Lanham Act

Section 43(a) of the Lanham Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, . . ., uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (1998); see also Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004).  Under § 43(a), a plaintiff seeking monetary damages must show "actual damages that were causally related to 'actual customer confusion or deception' of the purchasing public."  Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc., 880 F. Supp. 1005, 1022 (S.D.N.Y 1994) (quoting PPX Enters. v. Audiofidelity Enters., 818 F.2d 266, 271 (2d Cir. 1987)); see also Burndy Corp. v. Teledyne Indus., Inc., 748 F.2d 767, 771 (2d Cir. 1984).

As discussed above, SRC has failed to show any damages as a result of MapInfo's alleged disparagement.

Therefore, MapInfo's motion for summary judgment on this ground as to SRC's sixth counter-claim is granted.

## 2. § 349

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  N.Y. Gen. Bus. Law § 349(a).  To establish a claim under § 349, a plaintiff must demonstrate three elements: "'first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'"  Fibermark v. Brownville Specialty Paper Products, Inc., 419 F. Supp. 2d 225, 239 (N.D.N.Y. 2005) (quoting Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000) (citations omitted)).  Corporate competitors and consumers both have standing to bring a claim under § 349 provided that "the matter affects the public interest in New York.'"  Fibermark, 419 F. Supp. 2d at 239-40 (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)); see also Boule v. Hutton, 328 F.3d 84, 93-94 (2d Cir. 2003).  However, as discussed above, SRC has failed to show any damages as a result of MapInfo's alleged disparagement.

Therefore, MapInfo's motion for summary judgment on this ground as to SRC's sixth counter-claim is granted.

### 3. Reverse Passing Off

SRC's eleventh and twelfth counter-claims allege reverse passing off in violation of the Lanham Act, § 349, and 17 U.S.C. § 501.  SRC contends that MapInfo and its partners utilized SRC's software (TargetPro 3.7) while taking orders and demonstrating MapInfo's new product, TargetPro 4.0.

To demonstrate a claim for reverse passing off, the plaintiff must prove "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." Lipton v. Nature Co., 71 F.3d 464, 473 (2d Cir. 1995) (citing Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 781-85 (2d Cir. 1994)).  Here, SRC has failed to raise a genuine issue of material fact regarding the element of actual customer confusion.  "When a plaintiff seeks money damages in either a product infringement case or a false advertising case asserted under § 43(a), the plaintiff must introduce evidence of actual consumer confusion." Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 139 (2d Cir. 1991); see also Sun Trading Distrib. Co. v. Evidence Music, Inc., 980 F. Supp. 722, 727-28 (S.D.N.Y. 1997) (detailing the difference in proof required for recovery of money damages and that required for injunctive relief under the Lanham Act).  In its reply to MapInfo's counterstatement of material facts, SRC admits that it "has not identified a customer or reseller who read . . . [or] was confused by the July 2002 DM Review on MapInfo's website."  Def. Reply to Pl. Counterstatement of Material Facts (Docket No. 153) at

¶¶ 117-18.[14]  Thus, on SRC's own admission, there is no genuine issue of material fact as to

actual customer confusion.

In its reply memorandum of law in further support of summary judgment, SRC appears

to contend that MapInfo's actions were intentionally deceptive, thereby entitling SRC to a

presumption of consumer confusion and relieving SRC of the burden of proving actual

customer confusion.  Def. Reply Mem. in Further Support of Summary Judgment (Docket No.

153) at 13-14.  The Second Circuit has stated that

> [o]nce it is shown that a defendant deliberately engaged in a deceptive
> commercial practice, . . . a powerful inference may be drawn that the defendant
> has succeeded in confusing the public.  Therefore, upon a proper showing of
> such deliberate conduct, the burden shifts to the defendant to demonstrate the
> absence of consumer confusion.

Resource Developers, 926 F.2d at 140.

In support of its contention, SRC cites a single e-mail from David Haar ("Haar"), a

MapInfo employee, regarding the July 2002 DM Review.  The e-mail states, in relevant part,

that Haar would

---

[14] In the corresponding reply memorandum in further support of summary judgment,
SRC inexplicably contends that "SRC has demonstrated actual customer confusion."  Def.
Reply Mem. in Further Support of Summary Judgment (Docket No. 153) at 13-14.  SRC
cites the declaration of Sean Robbins ("Robbins"), a former customer.  However, nothing
in Robbins' declaration relates to any alleged confusion regarding the July 2002 DM
Review.  The declaration discusses the effect of an e-mail Robbins received from Fred
Cassin, a MapInfo employee, on Robbins' decision either to purchase MapInfo or SRC's
products.  Robbins had previously provided MapInfo with a Declaration stating that the e-
mail from Mr. Cassin "did not have any significant effect on my decision between
TargetPro 4.0 and Allocate, and it did not injure SRC's reputation and goodwill in my
eyes."  Robbins Decl. (Docket No. 130) at ¶ 7.  His subsequent declaration for SRC stated
that he could not say that the e-mail "had no impact on [his] decision-making process."
Robbins Decl. (Docket No. 139) at ¶ 7.  However, Robbins ultimately purchased SRC's
product, Allocate.  Id. at ¶ ¶ 6-8.  Thus, the one piece of evidence proffered by SRC fails
upon examination to support its claim of confusion.

> create a link from the TP page and will have [the DM Review] posted in the
> sales portal . . . .  Although the review is of v3.7 it doesn't say that anywhere
> and I think it'd take a very knowledgeable customer (vs. a prospect, which is the
> real target for such an item) to recognize that.

Dax Aff. at Ex. 40.  Nothing in this lone e-mail could reasonably be interpreted as MapInfo's

attempt  intentionally to deceive the public.  Thus, because SRC has failed to establish that

MapInfo intended to deceive the public, SRC cannot benefit from the presumption of

consumer confusion.  Further, because SRC has failed to show that MapInfo engaged in any

conduct "that was deceptive in a material way," their claim under § 349 should also be

dismissed.  Shapiro v. Berkshire Life Ins. Co., 212 F.3d 121, 126 (2d Cir. 2000) (upholding

dismissal of plaintiff's § 349 claim for lack of evidence that defendant engaged in any

materially deceptive conduct).

Therefore, MapInfo's motion for summary judgment as to SRC's eleventh counter-

claim is granted.

SRC also contends in its twelfth counter-claim that MapInfo violated SRC's copyrights

by demonstrating and shipping TargetPro 3.7 after MapInfo's rights to the software

terminated on June 30, 2002. MapInfo moves for summary judgment on this counter-claim,

arguing that there were no post-June 30 sales or demonstrations.  SRC allege two incidents

of sales or demonstrations of SRC's products after June 30, 2002: Galilee Enterprises

("Galilee") demonstrating TargetPro 3.7 and MapInfo selling SRC products to Irving Oil.

Stoecker testified that Kathy Dombrowski ("Dombrowski"), Galilee's President, told him

during a telephone conversation that she demonstrated TargetPro 3.7 in July and August of

2002 because MapInfo's product, TargetPro 4.0, was not available.  Stoecker Decl. V

(Docket No. 139) at ¶ 29.  Dombrowski stated that she does not recall having this

conversation with Stoecker and denies that she demonstrated TargetPro 3.7 after June 30, 2002.  Dombrowski Decl. (Docket No. 130) at ¶ 8.  However, the statement attributed by Stoecker to Dombrowski is hearsay and, therefore, is insufficient to create a question of fact on summary judgment, particularly where, as here, the alleged declarant states otherwise. See Hilbert S. v. County of Tioga, No. Civ. 03-193(TJM), 2005 WL 1460316, at *9 (N.D.N.Y. June 21, 2005) (citing Fed. R. Civ. P. 56).

SRC also contends that MapInfo sold SRC products to Irving Oil after June 30, 2002. SRC's only evidence to support this contention is Stoecker's speculation surrounding a MapInfo Customer Awareness Presentation.  In his November declaration, Stoecker states that the "presentation discusses MapInfo selling the customer [Irving Oil] an MRI product file for use with Cluster Analyzer.  It is my understanding that MRI does not have a product for Canada, and Market Math did not call their product Cluster Analyzer."  Stoecker Decl. V at ¶ 48; see also Stoecker Dep. (Dax Aff., Ex. 24) at 112-18.  MapInfo concedes that it sold TargetPro 3.7 to Irving Oil but has provided the invoice from that transaction -- dated June 28, 2002 – to prove that the product was sold and shipped before the termination date of June 30, 2002.  See Joseph Murply Decl. (Docket No. 150) at ¶ 11 & Ex. B.  Thus, Stoecker's unsupported speculation is insufficient to raise a question of material fact, especially in light of MapInfo's evidence that directly contradicts a post-June 30, 2002 sale to Irving Oil.  See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (holding that to defeat a motion for summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation").

Therefore, MapInfo's motion for summary judgment on SRC's twelfth counter-claim is granted.

### 4. Product Disparagement and Injurious Falsehood

MapInfo moves for summary judgment on SRC's eighth and ninth counter-claims for product disparagement and injurious falsehood, contending, inter alia, that SRC cannot demonstrate that any customers were lost due to the alleged disparagement by MapInfo.

The tort of product disparagement, which is also referred to as injurious falsehood,[15] requires a plaintiff to establish four essential elements: "(1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." Fashion Boutique, 75 F. Supp. 2d at 239.  "The New York courts define special damages 'as the loss of something having economic or pecuniary value.'" Id. (citation omitted).  In addition, special damages must be "fully and accurately stated, with sufficient particularity to identify actual losses." Kirby v. Wildenstein, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (internal quotation marks and citations omitted).  Special damages are not recoverable unless they are the "'natural and immediate consequence of the disparaging statements.'" Id. (quoting Angio-Med. Corp. v. Eli Lilly & Co., 720 F. Supp. 269, 274 (S.D.N.Y. 1989)).  As discussed above, SRC has failed to show any damages as a result of MapInfo's alleged disparagement.

---

[15] The torts of product disparagement and injurious falsehood require the same elements of proof to demonstrate a claim and, therefore, will be addressed together.  See Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006) ("Injurious falsehood, which is also referred to as . . . 'product disparagement,' . . . is a tort separate and distinct from the tort of defamation.") (citing Ruder & Finn Inc. v. Seaboard Sur. Co., 422 N.E.2d 518, 522 (N.Y. 1981)).

Therefore, MapInfo's motion for summary judgment as to SRC's eighth and ninth counter-claims is granted.

### D. Defamation Per Se

In its seventh counter-claim, SRC contends that MapInfo's alleged false statements about SRC and SRC software constitutes defamation per se.  Both parties have moved for summary judgment on this claim.

Under New York law, a plaintiff must demonstrate four elements to establish a cause of action for defamation: "(1) a false statement, (2) publication without privilege or authorization to a third party, (3) by at least a negligence standard of fault and (4) the statement either causes special damages or constitutes defamation per se."  Matthews v. Malkus, 377 F. Supp. 2d 350, 357 (S.D.N.Y. 2005) (citing Pub. Relations Soc'y of Am., Inc. v. Road Runner High Speed Online, 2005 WL 1364381, at *2 (N.Y. Sup. 2005)).  Statements that "tend to injure another in his or her trade, business or profession" constitute defamation per se.  Id. (citing Liberman v. Gelstein, 605 N.E.2d 344, 347-48 (N.Y. 1992)).  Further, statements that "impugn[] the basic integrity or creditworthiness of a business" also constitute defamation per se.  Ruder & Finn, 422 N.E.2d at 522.

When a statement rises to the level of defamation per se, injury is assumed.  See Celle v. Filipino Reporter Enters., 209 F.3d 163, 179 (2d Cir. 2000).  However, actual damages must still be proven.  Fashion Boutique, 314 F.3d at 59 (citing Orlowski v. Koroleski, 234 A.D.2d 436 (2d Dep't 1996)).  "'Even where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal

damages.'" Celle, 209 F.3d at 179 (quoting Van-Go Transport Co. v. New York City Bd. of Educ., 971 F. Supp. 90, 100 (E.D.N.Y. 1997)).  Here, there is no evidence that SRC sustained any actual damages as a consequence of MapInfo's alleged defamatory statements and MapInfo is granted summary judgment on SRC's claim for actual damages in it seventh counter-claim.

However, because SRC may recover nominal damages[16] on this counter-claim, the merits of its claim must be considered.  SRC contends that the following statements constitute defamation per se: six statements made by MapInfo in the "kill sheet"; three statements made by MapInfo at the July 11, 2002 conference call with MapInfo resellers; and an August 23, 2002 e-mail to a prospective customer.  See Def. Mem. of Law at 27.[17]  In SRC's motion for summary judgment, these statements are numbered five through seven, nine through eleven, twelve through fourteen, and eighteen respectively.  See id. at 12-16. SRC also contends that MapInfo acted with malice when making these alleged defamatory statements.  MapInfo contends that SRC's claim fails because the alleged disparaging statements about SRC's products go to a claim of product disparagement, not defamation; there is no proof that the defamatory statements alleged in SRC's pleadings about its financial condition were made by MapInfo; the allegation that MapInfo said SRC had "trouble

_____

[16]As to SRC's claim for punitive damages on this counter-claim, see subsection (3) infra.

[17] In its motion for summary judgment, SRC contends that MapInfo made nineteen separate disparaging and false statements about SRC and its products.  See Def. Mem. of Law at 8-17.  However, SRC only relies on these ten statements to demonstrate its defamation per se claim.  Id. at 27.  Thus, no issue of fact exists as to whether the remaining nine statements were defamatory and MapInfo is granted summary judgment as to those nine statements.

paying its bills" is time-barred and true; and MapInfo has rebutted any presumption that the alleged defamatory statements harmed SRC's business, reputation or goodwill in the industry.  See Pl. Mem. of Law at 28-29.

## 1. SRC's Products

MapInfo contends that statements five through seven, nine through eleven, and eighteen are more properly construed as claims for product disparagement, not defamation per se, because they are statements about SRC's products and services.  In support of its claim, MapInfo relies heavily on DeMarco-Stone Funeral Home, Inc. v. WRGB Broad., Inc., 610 N.Y.S.2d 666 (3d Dep't 1994).  In DeMarco-Stone, the plaintiff argued that the defendants' broadcast was defamatory because it stated that plaintiff "bungled" a funeral.  Id. at 667.  The Third Department held that this statement did "not impugn the creditworthiness or basic integrity of plaintiff but, rather, denigrates the quality of its services" and therefore "the cause of action sounds in product disparagement rather than defamation."  Id.  However, as the Second Circuit has stated, "[t]he line between statements that are defamatory per se and those that require proof of special damages remains fuzzy."  Celle, 209 F.3d at 179.

Here, issues of fact remain as to whether these alleged defamatory statements impugned the basic integrity of SRC.  Statements six and eighteen claimed that SRC had a "profound disregard for quality and lack of standards."  Statements five and eleven contend that SRC did not support its customers or products well, while statement seven claimed that SRC promised much but delivers little.  Further, statements nine and ten characterized SRC as a "gun-slinging consulting company" that had a "poor reputation in the marketplace among

30

customers and partners."  Because a reasonable factfinder could find that these statements

attacked the basic integrity of SRC as a company and not just its products and services,

material issues of fact remain.[18]  See Docket No. 57 at 6 (holding that the "gun-slinging"

comment and the alleged statement that SRC had no experience delivering shrink-wrapped

products "might reasonably be seen to impugn the integrity or business abilities of [SRC].").

Therefore, both parties' motions are denied as to statements five through seven, nine

through eleven, and eighteen.


## 2. SRC's Financial Condition

MapInfo contends that statements twelve and thirteen, which allegedly defamed

SRC's creditworthiness and financial condition, do not constitute defamation per se because

SRC has failed to demonstrate that MapInfo made the statements alleged in statement

twelve and that statement thirteen is time-barred and true.[19]

---

[18] MapInfo contends that statement fourteen, which alleged that a MapInfo employee characterized SRC as "quite litigious," is not actionable defamation.  On its face, a claim that a company is "litigious" does not constitute defamation per se.  See Shea v. Angulo, No. Civ. 93-4183(AGS), 1994 WL 86374, at *3 & n.5 (W.D.N.Y. Mar. 16, 1994) ("[S]tatements allegedly made by the defendant that (a) plaintiff had sued other money managers and (b) describing the suits as nuisance suits do not constitute slander per se.").  Therefore, statement fourteen does not constitute defamation per se and MapInfo is granted summary judgment as to that statement.

[19] MapInfo also argues that SRC has failed to prove the exact defamatory words alleged by SRC in paragraph 137 of its counter-claims.  See Docket No. 93 at ¶ 137.  In its reply memorandum, SRC contends that "the record supports the fact that this was the point and gist of the statements made by MapInfo."  Def. Reply Mem. of Law (Docket No. 139) at 21.  However, in a libel or slander action, "'[a]ny qualification in the pleading thereof by use of the words, 'to the effect', 'substantially', or words of similar import generally renders the complaint defective.'"  Geddes v. Princess Props. Int'l, Ltd., 451 N.Y.S.2d 150, 151 (1st Dep't 1982) (quoting Gardner v. Alexander Rent-A-Car, Inc., 280 N.Y.S.2d 595, 595 (1st Dep't 1967); see also Balduzzi v. City of Syracuse, No. Civ. 96-

In statement twelve, SRC contends that Jon Winslow ("Winslow"), an employee of MapInfo, encouraged listeners on the July 11 conference call to visit a "certain website to obtain a credit report on SRC and that the credit report showed that SRC had no credit rating."  Def. Mem. of Law at 14.  MapInfo contends that Winslow never stated that SRC had no credit.  See Pl. Reply Mem. of Law (Docket No. 140) at 16.  In his deposition testimony, Winslow testified that the credit report obtained from this website indicated that "SRC is a company who has no credit rating with this company [referring to the credit-reporting website], the classification was . . . basically indicated that there was not enough information available for them to make a credit rating, and I compared that to the information on the MapInfo report [which gave MapInfo a favorable credit rating]."  Winslow Dep. (Dax Aff., Ex. 20) at 177-78.  A reasonable factfinder could construe Winslow's characterization of SRC's credit report as impugning SRC's creditworthiness.  Thus, questions of fact remain as to whether Winslow's characterization of the credit report could constitute defamation per se.

As to statement thirteen, MapInfo contends first that this statement is time-barred.  In New York, the statute of limitations for a libel claim is one year.  See N.Y. C.P.L.R. § 215(3) (McKinney 2003).  During John Troiano's June 11, 2004 deposition, he testified that at the July 11, 2002 conference call, Winslow stated that "SRC had trouble paying their bills."  Troiano Dep. (Dax Aff., Ex. 21) at 25.  MapInfo contends that the statement is time-barred because the June 11 deposition was the first time that they were given notice of this alleged statement, more than a year after the statement was allegedly made.  SRC contends that the

---

824(HGM), 1997 WL 52434, at *6 (N.D.N.Y. Feb. 4, 1997).  Thus, SRC has failed to demonstrate that the statement alleged in paragraph 137 constitutes defamation per se.

statement arose out of the July 11, 2002 conference call and that it gave MapInfo notice of those statements within the one-year statute of limitations on April 16, 2003, when SRC served its Second Amended Answer with Counterclaims ("SRC Second Amended Answer"). See Def. Reply Mem. of Law at 14-15, 22; see also Docket No. 51 at ¶ 89.  Because statement thirteen appears to have arisen out of the conduct alleged in paragraph eighty-nine of SRC's Second Amended Answer, the statement relates back to the April 16, 2003 filing and thus is within the one-year statute of limitations.  See Fed. R. Civ. P. 15(c)(2); see also Pruiss v. Bosse, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) (holding that an amendment will relate back if it "make[s] more specific what has already been alleged").

MapInfo also argues that statement thirteen is true.  "Under New York law . . . it is 'fundamental that truth is an absolute, unqualified defense to a civil defamation action.'" Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) (quoting Commonwealth Motor Parts Ltd. v. Bank of Nova Scotia, 355 N.Y.S.2d 138, 141 (1st Dep't 1974)).  Further, "'substantial truth' suffices to defeat a charge of libel."  Id. (citation omitted). In support of its claim, MapInfo proffers an e-mail from SRC indicating that it was behind in paying monies owed to MapInfo because of a "cash crunch."  See Joseph Murphy Decl. (Docket No. 130) at Ex. A.  MapInfo also cites SRC's Dun & Bradstreet ("D&B") rating and credit risk score that indicate that SRC was downgraded "because D&B's file shows increased slowness in . . . [SRC's] payment record."  Pl. Mem. of Law at 31-33.  Although this evidence tends to support MapInfo's contention, a reasonable factfinder could find that this fails to meet either the truth or substantial truth standard under a libel claim.  Thus, material issues of fact remain as to whether statement thirteen constitutes defamation per se.

Thus, MapInfo is granted summary judgment on SRC's seventh counter-claim as to statements one through four, eight, fourteen through seventeen, and nineteen.  Both motions are denied as to statements five through seven, nine through thirteen, and eighteen.

### 3. Punitive Damages

Beyond nominal damages, SRC contends that it is entitled to punitive damages because MapInfo acted with both actual and common-law malice when making the alleged defamatory statements.  See Def. Mem. of Law at 28-29.  MapInfo contends that the alleged defamatory statements did not constitute either actual or common-law malice.  See Pl. Reply Mem. of Law at 28-29.  Further, MapInfo contends that SRC has failed to demonstrate that MapInfo's management authorized, participated in, consented to, or ratified the alleged conduct giving rise to punitive damages claim.  Id. at 29-30.

In New York, it is well-established that "punitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages." Loughry v. Lincoln First Bank, N.A., 494 N.E.2d 70, 74 (N.Y. 1986); see also Gardner v. Federated Dep't Stores, Inc., 907 F.2d 1348, 1351 (2d Cir. 1990).  "Put another way, this 'complicity rule'. . . results in employer liability for punitive damages only where a superior officer in the course of employment orders, participates in, or ratifies outrageous conduct." Id. at 75.  "The term 'superior officer' obviously connotes more than an agent, or 'ordinary' officer, or employee vested with some supervisory or decision-making responsibility."  Id. at 76.  "The agent's level of responsibility within the entity should be sufficiently high that his

participation in the wrongdoing renders the employer blameworthy, and arouses the

'institutional conscience' for corrective action. . . ." Id.

Here, SRC has failed to show that any superior officer at MapInfo ordered,

participated in, or ratified the alleged defamatory conduct.  Instead, SRC states in conclusory

fashion that

> [t]he MapInfo employees [Jon Winslow, Steve Bourgault, Fred Cassin, and
> Steve Seabury] making the statements about SRC were in a management
> position or were directed by management to take action that resulted in the
> defamatory statements about SRC.  In addition, MapInfo was complicit in the
> actions that resulted in the defamation of SRC and its products.

Def. Mem. of Law at 7 n.3.  SRC offers no evidence that the four named employees were in

any way "superior officers" at MapInfo.  Without proof that a MapInfo superior officer

authorized, participated in, or ratified the alleged defamatory conduct, SRC cannot prevail on

its claim for punitive damages.  See Gardner, 907 F.2d at 1352.

Therefore, MapInfo is granted summary judgment on SRC's claim for punitive

damages in its seventh counter-claim.[20]

### E. Remaining Counter-Claims

### 1. Failure to Pay Royalties

MapInfo moves for summary judgment as to SRC's third counter-claim, contending

that the G.T. Reilly expert report should be precluded, and, therefore, SRC has no proof of

---

[20] MapInfo also contends that it has rebutted any presumption of damages from the
alleged defamatory statements.  Pl. Mem. of Law at 34-36.  However, as discussed supra,
even where a plaintiff cannot show actual damages, a plaintiff still may recover nominal
damages.  See Celle, 209 F.3d at 179.  Thus, MapInfo's motion on this ground is denied.

unpaid royalties.  However, as discussed in Section II(A) supra, G.T. Reilly's report is admissible.  Thus, MapInfo's sole ground here for summary judgment fails.

Therefore, MapInfo's motion for summary judgment as to SRC's third counter-claim is denied.

## 2. Exclusion from Partner Events

MapInfo moves for summary judgment as to SRC's fifth counter-claim, contending that SRC did not have a contractual right to attend the partner events, and, in any event, lack damages from the alleged exclusion.  SRC appears to have abandoned this counter-claim.  In its reply memorandum, SRC states that it "has not sought damages resulting from MapInfo's exclusion of SRC from partner events and thus will not reply to the arguments made by MapInfo in Point VI D of its memorandum."  Def. Reply Mem. of Law at 1 n.3; see Pl. Mem. of Law at 51-53.  Thus, there is no material issue of fact as to the element of damages.

Therefore, MapInfo's motion for summary judgment as to SRC's fifth counter-claim is granted.

## F. MapInfo's Causes of Action

### 1. Failure to Pay Royalties

MapInfo moves for partial summary judgment as to its first cause of action, alleging that SRC breached the Termination Agreement by failing to pay 50% of the renewal or replacement fees included in the Multi-Year Contracts for the following customers: Journal

Register, San Diego Union Tribune, Darden Restaurants, and Simmons Company.  SRC

cross-moves for summary judgment, arguing that its performance was excused by MapInfo's

breach of the 2000 Distribution and Termination Agreements.

It is undisputed that pursuant to paragraph one of the Termination Agreement, SRC

was required to pay MapInfo 50% of certain revenues from Multi-Year Contracts, including

renewal and replacement fees.  See Termination Agreement at ¶ 1(a),(d),(f)(ii); see also Def.

Reply Mem. of Law at 1.  However, SRC contends that its performance was excused by

MapInfo's failure to have an updated TargetPro 4.0 available for renewal demonstrations and

MapInfo's exclusion of SRC from MapInfo partner events in May 2002.  SRC argues that the

promise to seek renewal of Multi-Year Contracts was based on "the assumption that MapInfo

would have an updated TargetPro product with which to renew such contracts that SRC

would have access to that product for purposes of customer demonstrations."  Def. Mem. of

Law at 36.  With respect to this assumption, the Termination Agreement is ambiguous and

does not specifically address what, if any, information would be provided to resellers to assist

in renewing Multi-Year customers.  Thus, material issues of fact remain as to this alleged

breach.

SRC also argues that MapInfo's exclusion of SRC employees from May, 2002 partner

events constitutes a breach of the Termination Agreement.  In support of its position, SRC

cites language from the Termination Agreement which stated that "[t]he parties seek to

maintain professional business relationships with each other and with current end users of

MapInfo products."  Termination Agreement at 2.  However, in May 2002, MapInfo excluded

SRC employees from attending MapInfo sales events.  By letter dated May 17, 2002, SRC

informed MapInfo that the exclusion of SRC employees from MapInfo partner meetings constituted a breach of the Termination Agreement.  See Dax Aff., Ex. 17; see also Exs. 62-63.  Here, the record is unclear whether the parties intended to include SRC participation in MapInfo partner events when they contracted to "maintain professional business relationships."  Thus, material issues of fact remain as to this alleged breach of the Termination Agreement.

Therefore, the parties' motions for summary judgement as to MapInfo's first cause of action are denied.

### 2. Lanham Act

MapInfo's fourth and fifth causes of action allege that after July 1, 2002, SRC continued to represent to end-users that it was authorized to sell licenses for MapInfo products in violation of § 43(a) of the Lanham Act.  In an earlier motion, SRC sought dismissal or summary judgment as to both causes of action.  See MapInfo Corp. v. Spatial Re-Engineering Consultants, No. Civ. 02-1008(DRH), 2004 WL 26350 (N.D.N.Y. Jan. 5, 2004).  This Court construed the motion as a motion for summary judgment and held that at the pre-discovery stage, MapInfo has at least raised questions of fact as to both causes of action and, thus, SRC's motion as to these causes of action was denied.

Here, SRC again moves for summary judgment as to these claims, arguing that "[t]he record provides no evidence that after June 30, 2002, SRC held itself out as a MapInfo 'Partner' or reseller or advertised that it was a source of MapInfo products."  Pl. Mem. of Law at 41.  SRC contends "that in situations in which SRC's own end-use customers required a

MapInfo product known as 'MI Pro,' SRC worked with a single MapInfo reseller . . . Mapping Analytics, to whom SRC passed along the customers' requests." Id.  However, MapInfo has submitted evidence that in the Spring of 2004, SRC provided McClatchy Newspapers ("McClatchy") with an "SRC Agreement for Products and Services for Desktop Users," which included MapInfo Professional Maintenance as a product.  Gillis Decl. II (Docket No. 140) at Ex. 17, McC032.  This agreement listed McClatchy as a licensee and stated that "[t]he following Standard Terms and Conditions are part of your license with SRC."  Id. at McC032-33.  It is undisputed that Mapping Analytics was not mentioned anywhere in the 2004 agreement with McClatchy.  See Def. Reply to MapInfo's Counterstatement of Material Facts at ¶ 95.  Further, the 2004 Agreement was substantially similar to a Spring 2002 agreement SRC provided McClatchy.  Gillis Decl. II at Ex. 17, McC042-45.  At that time, SRC was still an authorized reseller of MapInfo's products.

MapInfo also submitted undisputed evidence that SRC provided H&R Block with an "SRC Product License Agreement" for MapInfo Professional and SRC products that did not mention Mapping Analytics or a pass through and were paid by H&R Block to SRC.  Def. Reply to MapInfo's Counterstatement of Material Facts at ¶ 98.  It is also undisputed that SRC quoted BP a price for MapInfo Professional upgrades without mentioning Mapping Analytics.  Id. at ¶¶ 99-100.  Further, MapInfo provides an e-mail from an SRC salesman to BP advising BP that "[e]ven though we don't make much if any money on this MI Pro stuff, I do get revenue credit for these orders."  Id. at ¶ 102; Gillis Decl. II at Ex. 27, 0000145.

Therefore, viewing the evidence in the light most favorable to MapInfo, this suffices to raise an issue of material fact as to whether SRC misrepresented to end-users that it was an authorized reseller of MapInfo product licenses.

Therefore, SRC's motion for summary judgment as to MapInfo's fourth and fifth causes of action is denied.


### 3. Breach of Contract and Copyright Infringement

In its second cause of action, MapInfo alleges that SRC violated paragraph 6.5 of the Partnership Agreement when, after July 1, 2002, it continued marketing and selling MapInfo licenses. Am. Compl. at ¶¶ 11, 22. In its sixth cause of action, MapInfo alleges that SRC infringed MapInfo's copyright by purchasing end-user licenses for MapInfo products from authorized resellers and then "re-selling" those licenses to others in violation of the Copyright Act, 17 U.S.C. § 106. Id. at ¶¶ 11, 45-51. SRC seeks summary judgment on both causes of action.


### a. Contract Claim

As discussed above, genuine issues of material fact remain as to whether SRC breached the partnership agreement by marketing MapInfo licenses after July 1, 2002. See Section III(F)(2) supra. SRC contends, however, that even assuming that "the facts could be read to constitute sales by SRC of MapInfo products, the activity could not possibly be an actionable breach of contract" because the restrictions imposed on the parties by the Partnership Agreement terminated after July 1, 2002. Def. Mem. of Law at 43. This

40

argument is without merit.  "'In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish.'" Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006) (quoting Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990) (citations omitted)). Paragraph 6.5 of the Partnership Agreement states that "[i]n the event of expiration or termination of this Agreement for any reason Partner [SRC] shall have no further rights as a MapInfo Partner and all rights granted herein by MapInfo shall cease." Partnership Agreement at § 6.5.  The plain language of this provision clearly indicates the parties' intention to terminate all partner rights granted to SRC by MapInfo.  Thus, SRC's motion for summary judgment on this ground is denied.

SRC further contends that even if the Partnership Agreement served as the basis for the cause of action, and SRC's referrals to Mapping Analytics constituted a breach, MapInfo has failed to prove any damages from the alleged breach.  However, MapInfo has submitted a declaration from Wendy Coreose, regional sales manager of MapInfo Canada, that shows that at least one customer, Bank of America, viewed SRC as a "reseller" and was purchasing upgrades to MapInfo Professional from SRC and not MapInfo.  Gillis Decl. II at Ex. 24, ¶ 5. Further, MapInfo need not demonstrate money damages because the relief it seeks here is solely injunctive.

Therefore, SRC's motion for summary judgment as to MapInfo's second cause of action is denied.

### b. "First Sale" Doctrine

The "first sale" doctrine "holds that where the owner of a copyrighted work transfers ownership of a copy of that work, 'the person to whom the copy . . . is transferred is entitled to dispose of it by sale . . . or any other means.'"  Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. 208, 212 (E.D.N.Y. 1994) (citations omitted).  "The party asserting the protection of the doctrine bears the burden of proving its applicability."  Id. at 212.  SRC contends that even if "the conduit service SRC provided did amount to a sale or transfer of ownership of copies of MapInfo software," these transactions were lawful under the "first sale" doctrine.  However, as discussed supra, genuine issues of fact still remain as to transactions between MapInfo and its resellers, between resellers and SRC, and between SRC and customers.  Thus, construing the evidence in the light most favorable to MapInfo, material issues of fact still remain.

Therefore, SRC's motion for summary judgment as to MapInfo's sixth cause of action is denied.


### IV.  Conclusion

For the reasons set forth above, it is hereby

**ORDERED** that:

1. SRC's motion for summary judgment (Docket No. 127) is **DENIED** as to:

A. The first, second, fourth, fifth, and sixth causes of action in the amended complaint;

42

B. The second, fourth, sixth, seventh, eleventh, twelfth, thirteenth, and fourteenth counter-claims; and

C. The first, second, and third third-party causes of action against USADATA;

2. MapInfo's motion for partial summary judgment (Docket No. 130) is:

A. **DENIED** as to the first cause of action in the amended complaint;

B. **DENIED** as to the third, fourth, thirteenth, and fourteenth counter-claims;

C. **DENIED** as to the first, second, and third third-party causes of action;

D. **GRANTED** as to the second, fifth, sixth, eighth, ninth, eleventh, and twelfth counter-claims; and

E. As to the seventh counter-claim:

i. **GRANTED** as to SRC's claims for actual and punitive damages;

ii. **GRANTED** as to statements one through four, eight, fourteen through seventeen, and nineteen; and

iii. **DENIED** as to SRC's claim for nominal damages and as to statements five through seven, eight through thirteen, and eighteen;

3. SRC's motion to preclude MapInfo's expert witness (Docket No. 126) is **GRANTED**;

4. MapInfo's motions to preclude SRC's expert witnesses (Docket Nos. 128, 129) is:

A. **GRANTED** as to Dr. Warren J. Keegan (Docket No. 128); and

        B. **DENIED** as to G.T. Reilly (Docket No. 129).

**IT IS SO ORDERED.**

DATED:  September 28, 2006
        Albany, New York

_____
United States Magistrate Judge